McMANIGLE *v.* DETROIT UNITED RAILWAY.

STREET RAILWAYS—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE — DI-
RECTED VERDICT—SIGNALS.

> Where plaintiff started to cross a wye of defendant's tracks
> to reach a car which he purposed to board, and was
> obliged to pass in the rear of a standing car that was
> about to back up to turn about on the intersection, and
> no warning or signal was sounded to indicate the intention
> to back, as required by an ordinance of the municipality,
> known to the plaintiff, and there was no conductor on
> the rear platform, as also required by ordinance, the trial
> court erred in directing a verdict for defendant on the
> ground that plaintiff did not look after he left the curb, in
> taking five or six steps and passing behind the standing
> car. He was entitled to assume that the servants of de-
> fendant would conform to the provisions of the ordinance
> and the standing car would not back up without a con-
> ductor at the rear to sound a warning or take necessary
> precautions.

Error to Wayne; Van Zile, J. Submitted June 22,
1916. (Docket No. 29.) Decided December 21, 1916.

Case by Archibald J. McManigle against the Detroit
United Railway for personal injuries. Judgment for
defendant on a directed verdict. Plaintiff brings er-
ror. Reversed.

*Charles T. Wilkins,* for appellant.

*Corliss, Leete & Moody (Frederick T. Harward,* of
counsel), for appellee.

PERSON, J. On the 12th day of June, 1913, plaintiff
was hit by a street car on Dix avenue, in the city of
Detroit, and severely injured. At the trial a verdict
was directed for defendant upon the ground that plain-
tiff was guilty of contributory negligence.

Dix avenue runs in an easterly and westerly direction, and upon it defendant has a double track for its cars. The northerly track is used for west-bound cars, and the southerly track for cars going east. Livernois avenue intersects Dix avenue from the north, but does not extend beyond it towards the south. Livernois avenue also has a double street car track, and cars coming down it towards the south turn by means of the westerly leg of a "Y" upon the northerly track on Dix avenue, back up towards the east, and then turn north on the easterly leg of the "Y" to the east track on Livernois avenue. On the day in question, a Sherman street car had come down Livernois avenue from the north, run out on the west leg of the "Y," and backed to the east on the north Dix avenue track to a point near the east leg of the "Y," where it stood with the front end towards the west and the rear end towards the east. About the same time a Springwells car was run in from the west on the southerly Dix avenue track and stopped with the end of the car a little farther east than the rear end of the Sherman street car. The Springwells car reversed its trolley and prepared to start west. It was what is sometimes called a "double-ender" with platforms for the entrance of passengers at each end. The steps to the platform at the east end were on the north side of the car and at the west end on the south side.

In determining whether a plaintiff's proofs show a *prima facie* cause of action, it is always necessary that they be construed as strongly in his favor as is reasonably possible. *Putnam* v. *Railway,* 164 Mich. 342 (129 N. W. 860). So construed, the particular facts of the injury were as follows: Plaintiff, with a friend named Hayes, was standing on the north sidewalk of Dix avenue, nearly north of the west end of the Springwells car; and, wishing to go in the direction that car would take, they started across the street

to enter it by the easterly platform. There is an ordinance of the city of Detroit requiring a conductor, as well as a motorman, upon every car, and another ordinance making it the duty of the conductor to be upon the rear platform and give warning to pedestrians and vehicles whenever the car is about to be backed. In going to the Springwells car from where they stood, it was necessary for plaintiff and Hayes to pass in the rear of the Sherman street car, but just how many feet from that car it is not definitely shown. Both were aware of the ordinance mentioned, and just as they were leaving the sidewalk both noticed that there was no conductor on the rear platform of the Sherman street car. They believed it would not start until he was there, and thought they could pass to the Springwells car in safety. From the northerly curb on Dix avenue to the north rail of the northerly track on that avenue, it is 15.4 feet. Both say that the Sherman street car was standing still when they started, and without any indication that it was about to be moved. Hayes was ahead and got across the northerly track on Dix avenue in safety; but plaintiff, who was just behind him, was struck by the Sherman street car, which had begun to back, without the conductor being on the rear platform, or any warning from him. It is conceded that plaintiff did not take another look at the Sherman street car after he left the sidewalk, and it was for this that the trial court held him guilty of contributory negligence.

We cannot agree with the trial court in that conclusion. If the car had been moving when plaintiff looked at it as he was leaving the sidewalk, the situation would have been different; or, if there had been any indication that it was about to be backed, he should have been upon his guard. But he is not to be charged with the duty of assuming that the car might be backed in violation of the ordinance. Defendant calls atten-

tion to plaintiff's admitted knowledge of the fact that the car would have to be backed farther before it could turn onto the east leg of the "Y"; but, even knowing this, plaintiff had the right to assume that it would not be backed until the conductor was on the rear platform to give notice and warning. Plaintiff and Hayes were walking rapidly, and it was only five or six steps from the curb to the northerly track. People were getting on the Springwells car and it was about to start. Under these circumstances, we do not think it can be said that plaintiff was guilty of contributory negligence as matter of law. We think, rather, that the case is governed by the principles laid down in *Putnam* v. *Railway, supra,* and the cases there cited.

The judgment is reversed, with costs, and a new trial ordered.

STONE, C. J., and KUHN, OSTRANDER, BIRD, MOORE, STEERE, and BROOKE, JJ., concurred.