TILEY *v.* DETROIT UNITED RAILWAY.

1. STREET RAILROADS—NEGLIGENCE—WARNING SIGNALS—CONTRIBUTORY NEGLIGENCE.

A motorcycle rider, who was injured by colliding with a street car, which, without warning, suddenly commenced to back across the street along a wye, and who had seen cars at this point previously, and knew that a watchman was stationed near the cars, and usually gave notice to any persons that approached if a car was about to back, was entitled to recover, and defendant's deduction that he must have been 46 feet from the car and should have been able to avoid an accident, could not be adopted as matter of law.

2. SAME—TRIAL—CHARGE.

Instructions to the jury that, if they found defendant was accustomed to give warning to persons approaching whenever it was about to move one of the cars across the street on the wye, by having an employee standing near, or by sounding a gong or by other signals, the plaintiff would have a right to believe that no car was about to back across the highway, and if he did all that a careful and prudent man should do to avoid an accident, their verdict should be for plaintiff, correctly stated the rules of law applicable.

3. SAME.

And, *held,* that other requests of the defendant were covered by the general charge.

Error to Wayne; Tucker, J., presiding. Submitted January 19, 1915. (Docket No. 130.) Decided January 3, 1916.

Case in justice's court by John Tiley against the Detroit United Railway for personal injuries. From a judgment for plaintiff, defendant appealed to the circuit court. Judgment for plaintiff. Defendant brings error. Affirmed.

*Corliss, Leete & Moody* (*Claude H. Stevens,* of counsel), for appellant.

*Thomas Hislop,* for appellee.

BIRD, J. Late in the afternoon of April 23, 1912, defendant had two street cars standing side by side on its double-track Woodward avenue line, near the intersection of Cortland avenue. Just at the moment when the east car started to back across behind the west car on the "Y" which led to the power plant, plaintiff was approaching on a motorcycle from the north between the west track and the curb. After seeing the backing car across his path, he was unable to stop before reaching it, and as a result a collision occurred in which both plaintiff and motorcycle received injuries. On the theory that the motorman operated the car negligently and gave no warning of his intention to back the car across the street, the plaintiff sued the defendant in justice's court, and recovered a judgment therein, and a like result was reached in the circuit court on appeal.

1. The principal question raised by defendant is the contributory negligence of the plaintiff. Taking as a basis plaintiff's statement that he was going 8 miles an hour, and that he was 11 feet north of the west car when he discovered the backing car, defendant arrives at the conclusion that plaintiff must have been 46 feet and upwards north of the obstructing car when he first saw it, and the argument is made that, had he used reasonable care, he could have avoided the collision. This may be so, but we do not think we can assert it as a matter of law. The speed at which plaintiff was going, the distance he was from the car when he first discovered it, the distance the west car was from the crossover, the distance within which he could have stopped his machine, and the distance within

which an ordinarily prudent man ought to have seen it were all questions of fact for the jury in connection with the other existing conditions. Another item of proof which was proper to consider in this connection was the failure of the watchman or lookout to give any warning, although he was present. It appeared that it was usual for him to warn the approaching traffic when a car was about to back onto the cross-over, and that fact was known to plaintiff. We are of the opinion that the contributory negligence of the plaintiff was a question of fact, rather than one of law.

This case appears to be distinguishable from the recent case of *Patterson* v. *Railway,* 187 Mich. 567 (153 N. W. 670), which is somewhat similar on the facts, in that the plaintiff in this case could not turn aside to avoid the collision without running into either the curb on the west or the south-bound car on the east. Another point of difference is that in the instant case plaintiff relied upon the flagman, who was stationed at that point, to give warning when such operations were going on.

2. Complaint is made of the following instruction:

"That, if you find that it was the custom of the defendant to give a warning to persons whenever it was about to have one of its cars leave the car tracks in the middle of the highway and run such car into the 'Y' across the highway between the track and curbstone, and thus close the traffic for the time being by having one of its employees stationed there, or by sounding a gong, or otherwise, warning those who sought to use the highway that a car was about to back across the highway, the plaintiff had a right to believe no car was about to back at that moment, and was justified in so believing if the defendant on this occasion did not give any such customary warning, and it was not negligence to assume that the defendant would give some warning of its intention of backing a car across the street from the eastern and western tracks into the 'Y,' and that no car would sud-

denly start across in front of him, and if he did all a careful and prudent man should do to avoid an accident, then your verdict should be for the plaintiff."

Plaintiff testified that he was in the habit of passing this point going to and from his work at the Ford automobile plant; that he had seen cars back onto the "Y" in the morning and evening, but not at other times of the day; that when he had seen cars back onto the "Y" a watchman was in charge to protect travelers. It was shown that the watchman was there on this occasion, but that he gave no signal or warning; in fact, he does not claim that he did. If it were the custom established by the defendant to guard such operations, plaintiff had a right to rely upon this being done on that occasion, at least up to the time when he could observe that the usual custom was not going to be observed. It cannot be said as a matter of law that plaintiff was guilty of negligence for assuming that the defendant would do what it had habitually done in the past. Counsel observes with reference to this part of the charge that:

"If the law in this respect were correctly stated by the trial judge, it would do away with the doctrine of contributory negligence in every case where the plaintiff relied upon the exercise of due care by a defendant company."

The foregoing instruction did not indicate to the jury that plaintiff was relieved of the duty of exercising due care, but simply stated to them with respect to this custom that plaintiff would not be guilty of negligence for assuming that the defendant would, on this occasion, do what it had led him in the past to believe that it would do again. We think no exception can be taken to this part of the charge.

3. Complaint is made because the trial court refused to give defendant's fourth and seventh requests, with relation to the speed of the motorcycle. The trial court

did not give these requests-in the precise language of the requests, but they were fairly covered in the general charge.

We find no reversible error in the record.

The judgment will be affirmed.

STONE, C. J., and OSTRANDER, MOORE, STEERE, and BROOKE, JJ., concurred with BIRD, J. KUHN, J., concurred in the result.

The late Justice MCALVAY took no part in this decision.